IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID TEAGUE, ) | |
| ) | |
| Plaintiff, ) | Case No.: |
| ) | |
| v. ) | |
| ) | Complaint for violation of Civil Rights |
| CITY OF CHICAGO DETECTIVES D. ) | |
| SALGADO, STAR NO. 16347, P. ) | |
| THEODORE, STAR NO. 10523, R. ) | **JURY DEMANDED** |
| PRUGER, STAR NO. 15445, B. COX, ) | |
| STAR NO. 19328, R. RAMIREZ, STAR ) | |
| NO. 12261, C. PHILLIPS III, STAR NO. ) | |
| 6657, J. JANOPOULOS, STAR NO. ) | |
| 2675 and M. MARTINEZ, STAR NO. ) | |
| 11031, UNKNOWN AND UNNAMED ) | |
| CITY OF CHICAGO POLICE ) | |
| OFFICERS, and THE CITY OF | |
| CHICAGO, | |
| | |
| Defendants. | |

## JURISDICTION AND VENUE

1. This action arises under the United States Constitution and the Civil Rights Act of 1871 (42 U.S.C. Section 1983). This court has jurisdiction under and by virtue of 28 U.S.C. Sections 1343, 1331 and 1367.

2. Venue is founded in this judicial court upon 28 U.S.C. Section 1391 as the acts complained of arose in this district.

## PARTIES

3. At all times herein mentioned, Plaintiff DAVID TEAGUE (hereinafter "Plaintiff") was and is a citizen of the United States and was within the jurisdiction of this court.

4. At all times herein mentioned, Defendants City of Chicago Police DETECTIVES D. SALGADO; P. THEODORE; R. PRUGER; B. COX; R. RAMIREZ; C. PHILLIPS III; J.

1

JANOPOLOUS; and M. MARTINEZ, collectively "police defendants" and unknown and unnamed officers were employed by the City of Chicago Police Department and were acting under color of state law and as the employee, agent, or representative of the City of Chicago Police Department. These Defendants are being sued in their individual capacities.

5. At all times herein mentioned, the CITY OF CHICAGO was a political division of the State of Illinois, existing as such under the laws of the State of Illinois. At all relevant times, the CITY OF CHICAGO maintained, managed, and/or operated the CITY OF CHICAGO Police Department.

## FACTUAL ALLEGATIONS

6. On or about December 3, 2015, Defendant Salgado falsified information to fraudulently obtain a "J. Doe" search warrant to search Plaintiff's residence.

7. On or about December 4, 2015, all Defendants executed the search warrant at Plaintiff's residence.

8. Upon entering Plaintiff's home, Defendant Salgado claimed Plaintiff, upon being asked if there was anything illegal in the house, motioned and stated, "it's all there."

9. Plaintiff did not motion or state "it's all there" at any point on December 4, 2015.

10. Upon executing the search, Defendant Theodore falsely claimed to have located narcotics in Plaintiff's home.

11. Plaintiff did not possess narcotics at his residence on December 4, 2015.

12. During the execution of the search, Defendants found U.S. Currency belonging to the Plaintiff and illegally seized the U.S Currency.

13. The Defendants did not properly inventory all of the U.S. Currency at the Plaintiff's residence, thus stealing property.

14. On or about December 29, 2015, Plaintiff was indicted for two counts of possession of a controlled substance with intent to deliver.

15. Plaintiff remained behind bars for roughly 564 days. Plaintiff was released on bond on June 20, 2017.

16. All criminal charges against Plaintiff were dismissed on March 8, 2018 in Plaintiff's favor in a manner indicative of innocence.

17. Plaintiff was deprived of his liberty for a substantial length of time, roughly 2 years and 3 months, as a result of the acts of the Defendants.

18. By reason of the above-described acts and omissions of Defendants, Plaintiff sustained injuries, including but not limited to, loss special damages, humiliation and indignities, and suffered great mental and emotional pain and suffering all to his damage in an amount to be ascertained.

19. The aforementioned acts of Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's rights and justify the awarding of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

20. By reason of the above-described acts and omissions of Defendants, Plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action so that he might vindicate the loss and impairment of his rights. By reason thereof, Plaintiff requests payment by Defendants of a reasonable sum for attorney's fees pursuant to 42 U.S.C. Section 1988, the Equal Access to Justice Act or any other provision set by law.

## COUNT I
### PLAINTIFF AGAINST ALL INDIVIDUAL KNOWN AND UNKOWN DEFENDANTS AND OTHERS, FOR A CONSPIRACY TO VIOLATE HIS FOURTH AND FOURTEENTH AMENDMENT RIGHTS THROUGH UNLAWFUL DETENTION

21. Plaintiff hereby incorporates and realleges paragraphs one (1) through twenty (20) hereat as though fully set forth at this place.

22. The individual Defendants and each of them, as well as the other unknown and unnamed officers of the Chicago Police Department, acted in a conspiracy to deprive Plaintiff of his search and seizure, due process, and liberty rights by agreeing to, and in furtherance of that agreement, manufacturing, fabricating and falsifying evidence, and falsifying police reports as indicated above.

23. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities, secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

24. Subsequent to his arrest, Plaintiff was continually detained without probable cause in violation of his Fourth Amendment Rights.

25. Further in violation of the Plaintiff's Fourth and Fourteenth Amendment rights, Defendants also manufactured, planted, and fabricated evidence and falsified police reports. In addition, Defendants provided false information to fraudulently obtain a search warrant.

26. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth due process rights. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT II
### PLAINTIFF AGAINST THE INDIVIDUAL DEFENDANTS AND EACH OF THEM KNOWN AND UNKNOWN FOR VIOLATION OF PLAINTIFF'S FOURTH AND FOURTEENTH AMENDMENT RIGHTS THROUGH UNLAWFUL DETENTION

27. Plaintiff incorporates and realleges paragraphs one (1) through twenty (20) hereat as though fully set forth at this place.

28. The Defendants and each of them, known and unknown, individually, acted to deprive Plaintiff of his search and seizure, due process, and liberty rights by manufacturing, fabricating and falsifying evidence, and falsifying police reports as indicated above.

29. By reason of the conduct of Defendants and each of them, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth Amendment to the Constitution of the United States and laws enacted thereunder.

30. Subsequent to his arrest, Plaintiff was continually detained without probable cause in violation of his Fourth Amendment rights.

31. Further, in violation of the Plaintiff's Fourth and Fourteenth Amendment rights, Defendants also manufactured, planted, and fabricated evidence and falsified police reports. In addition, Defendants provided false information and a false witness to fraudulently obtain a search warrant.

32. The foregoing was unnecessary and unreasonable and was therefore in violation of Plaintiff's Fourth and Fourteenth due process rights. Therefore, the Defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983.

## COUNT III
## PLAINTIFF AGAINST THE CITY OF CHICAGO FOR *MONELL* LIABILITY

33. Plaintiff incorporates and realleges paragraphs one (1) through twenty (20) hereat as though fully set forth at this place.

34. The misconduct of the Chicago Police Department Sergeants and Police Officers described above was undertaken pursuant to the practice of the Chicago Police Department in that as a matter of Practice, the Chicago Police Department encourages the very type of misconduct at issue here by failing to adequately train, supervise control and/or discipline its officers, such that its failure to do so manifests deliberate indifference.

35. As a matter of practice, the Chicago Police Department facilitates the type of misconduct at issue by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiffs. Specifically, Chicago Police officers accused of civil rights violations can be confident that neither the Independent Review Authority, COPA, nor Internal Affairs will reasonably investigate those accusations, and will refuse to recommend discipline even where the Officer has violated rights of citizens.

36. The Chicago Police Department has a widespread "code of silence" wherein police officers will not report misconduct committed by fellow officers.

37. Municipal policy-makers are aware of, and condone and facilitate by their inaction, a "code of silence" in the Chicago Police Department. For example, on December 8, 2015 Rahm Emmanuel, Mayor of the City of Chicago, stated publicly that Chicago Police officers maintain this code of silence.

38. On December 8, 2015 Mayor Emanuel was asked the following question and gave the following answer during a television interview on WTTW in Chicago, Illinois:

> Question: I want to ask you point blank, is there a code of silence that exists among Chicago police officers?
>
> Answer: The short answer is, yes.

39. Several of the individual Defendants in this case have had dozens of citizens' complaints filed against them without the City of Chicago implementing any discipline against them.

40. For example, Defendant Salgado has had at least thirty-one (31) misconduct complaints filed against him, and only one has led to a two (2) day suspension. At least nine (9) of those misconduct complaints include allegations Salgado engaged in an illegal search.

41. Defendant Theodore has had at least nineteen (19) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint. At least four (4) of those misconduct complaints include allegations Theodore engaged in an illegal search.

42. Defendant Pruger has had at least twenty-nine (29) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint. At least fourteen (10) of those misconduct complaints include allegations Pruger engaged in an illegal search.

43. Defendant Cox has had at least twenty-six (26) misconduct complaints filed against him, and served only a twelve (12) suspension for bribery and official corruption.

44. Defendant Ramirez has had at least twenty-two (22) misconduct complaints filed against him, and at least six (6) of those misconduct complaints include allegations Ramirez engaged in an illegal search.

45. Defendant Phillips III has had at least seventeen (17) misconduct complaints filed against him, and least four (4) of those misconduct complaints include allegations Phillips III engaged in an illegal search.

46. Defendant Janopoulos has had at least forty-two (42) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint. At least fourteen (14) of those misconduct complaints include allegations Janopoulos engaged in an illegal search.

47. Defendant Martinez has had at least four (4) misconduct complaints filed against him, and has never been disciplined by the City of Chicago for any citizen complaint. At least half of those misconduct complaints include allegations Martinez engaged in an illegal search.

48. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged herein on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases.

49. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

50. As a matter of express policy, the City of Chicago refuses to take into consideration patterns of allegations of civil rights violations when evaluating the merits of any particular complaint. In other words, if a police officer is accused of the same kind of misconduct multiple times IAD, IPRA and/or COPA will not consider those allegations if they are deemed unsustained.

51. Even in instances when the City of Chicago has paid thousands of dollars to settle claims and/or satisfy judgments that resulted from the misconduct of its officers it refuses to investigate and/or reinvestigate misconduct by its police officers.

52. For example, as a result of the lawsuits filed against Defendants Salgado and Pruger, the City of Chicago has paid more than $414,557 in settlements and judgements.

53. Similarly, Defendants Salgado and Pruger, have a multitude of pending lawsuits against them alleging the violation of citizens' civil rights.

54. In January 2017, The U.S. Department of Justice issued a report based upon an extensive investigation into the practices of the Chicago Police Department. This report included the following findings:

   a. The City of Chicago's accountability systems for Chicago Police Officers contribute a pattern or practice of unconstitutional conduct;

   b. The City of Chicago's Policies and Practices impede the investigation of Police Officer misconduct;

   c. Investigations into police misconduct are neither fair nor complete;

   d. The City of Chicago and the Chicago Police Department do not take sufficient steps to prevent officers from deliberately concealing misconduct; and

   e. The City of Chicago's discipline system for Chicago Police Officers lacks integrity and does not effectively deter misconduct.

55. Plaintiffs allege that these customs, policies and practices, described above, were the moving force behind the violations of the Plaintiffs' rights. Based upon the principles set forth in Monell v. New York City Department of Social Services, the City of Chicago is liable for all the harm done to Plaintiffs as set forth above.

WHEREFORE, the Plaintiff, by and through his attorneys, ED FOX & ASSOCIATES, requests judgment as follows against the Defendants, and each of them:

1. That individual Defendants and each of them and other unnamed and unknown Defendants be required to pay Plaintiff's general damages, including emotional distress, in a sum to be ascertained;

2. That these same Defendants be required to pay Plaintiff's special damages;

3. That these same Defendants other than the City of Chicago be required to pay Plaintiff's attorneys fees pursuant to Section 1988 of Title 42 of the United States Code, the Equal Access to Justice Act or any other applicable provision;

4. That the individual Defendants and each of them and other unnamed and unknown Defendants other than the City of Chicago and Cook County be required to pay punitive and exemplary damages in a sum to be ascertained;

5. That the Defendants be required to pay Plaintiff's costs of the suit herein incurred; and

6. That Plaintiff have such other and further relief as this Court may deem just and proper.

BY: s/ Edward M. Fox
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efox-law.com

**PLAINTIFF HEREBY REQUESTS A TRIAL BY JURY**

BY: s/Edward M. Fox
ED FOX & ASSOCIATES
Attorneys for Plaintiff
300 West Adams
Suite 330
Chicago, Illinois 60606
(312) 345-8877
efox@efox-law.com